**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 5, 2017**

# In the Court of Appeals of Georgia

A17A0324. HILLSMAN v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted LeAnthony Hillsman on one count each of cruelty to children in the first degree, aggravated battery, and aggravated assault. Hillsman appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence supporting his convictions and arguing that the trial court erred in denying his claims of ineffective assistance of counsel and in failing to conduct a hearing to determine whether he could represent himself. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2012, Hillsman lived with five-month-old J. M.'s mother (with whom Hillsman

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

was romantically involved), J. M. (whose father was not Hillsman), and Hillsman and the mother's three-year-old daughter. On February 5, 2012, the mother left for work just before 8:00 a.m., and Hillsman stayed home to babysit J. M. Later that afternoon, a neighbor heard J. M. crying excessively in a manner that she did not think was normal. As the crying continued, the neighbor considered calling the police. But a short time later, the neighbor heard a knock on her door and opened it to find Hillsman in a panic, claiming that J. M. was not breathing and that he had no vehicle nor a telephone to call an ambulance. After quickly determining that J. M. was, in fact, not breathing, the neighbor agreed to drive J. M. and Hillsman to the hospital.

While en route to the hospital, Hillsman attempted to administer CPR to J. M., but the neighbor informed him that he was not administering it properly for a child of J. M.'s size. Upon reaching the local hospital, emergency-room physicians determined that J. M.'s injuries were too severe to be treated there. Consequently, J. M. was immediately flown to the Medical Center of Central Georgia in Macon. There, physicians examined J. M. and determined that he had suffered subdural hemorrhaging, retinal hemorrhaging, bruising to his sternum, and a torn frenulum of the tongue, all of which were consistent with the child having been violently shaken.

In addition, J. M. had also suffered several puncture wounds to his feet and fractures to several ribs, and had to be placed on a ventilator.

Given the nature and severity of J. M.'s injuries, hospital staff notified local law enforcement, and a sheriff's department investigator interviewed Hillsman at the hospital. During that interview, Hillsman claimed that J. M. must have suffered his injuries by falling off the sofa after he placed the child there. Later that same day, the investigator interviewed Hillsman at his home and confronted him with the fact that the physician who treated J. M. asserted that a short fall from a sofa could not have possibly caused the child's injuries. At that point, Hillsman admitted that J. M. did not fall from the sofa but, instead, he claimed that the injuries may have occurred when he put the child down on the sofa too hard. Then, based on this change in Hillsman's account and the physician's opinion regarding the child's injuries, the investigator arrested Hillsman and seized a small kitchen knife that he suspected caused the puncture wounds to J. M.'s feet.

Following Hillsman's arrest, investigators conducted a third interview. And during that interview, Hillsman claimed that five-month-old J. M. had acquired splinters in his feet while Hillsman helped him practice walking on the wooden front porch and that he had then used the kitchen knife to extract the splinters.

3

Additionally, Hillsman stated that he may have accidentally injured J. M. while trying to perform CPR on the child after he had stopped breathing. Nevertheless, shortly thereafter, the State charged Hillsman, via indictment, with one count each of cruelty to children in the first degree, aggravated battery, and aggravated assault.

The case then proceeded to trial, during which the two sheriff's department investigators and the neighbor who drove Hillsman and J. M. to the hospital testified. J. M.'s mother also testified and stated that her son, who was healthy when she left for work on the day in question, now suffered seizures and had to be fed with a tube. In addition, the physician who treated J. M. testified that the child's injuries could not have possibly been caused by a short fall from a sofa but were instead consistent with him having been violently shaken. The physician further testified that the puncture wounds to J. M.'s feet appeared to be in a pattern and, thus, in contrast to the randomness in which one normally suffers splinters. Finally, the physician testified that J. M.'s brain injury required him to be fed with a tube and that he would need significant rehabilitation in order to function normally.

After the State rested, Hillsman testified in his own defense and claimed, again, that his attempt to remove splinters from J. M.'s feet caused the puncture wounds and that his CPR attempts possibly caused the bruising to the child's sternum and his

4

fractured ribs. Hillsman also claimed that J. M.'s shaking injuries may have occurred when he frantically ran to the neighbor's house while carrying the child. But at the conclusion of the trial, the jury found Hillsman guilty on all three counts of the indictment.

Subsequently, Hillsman obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance. But after conducting a hearing on Hillsman's motion, during which his trial counsel testified regarding his representation, the trial court denied it. This appeal follows.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[2] And in evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility but only determine whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] Accordingly, the jury's verdict will be upheld so long as there is "some competent evidence, even

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[3] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U.S. at 319 (III) (B).

though contradicted, to support each fact necessary to make out the State's case[.]"[4] With these guiding principles in mind, we turn first to Hillsman's specific challenges in this regard.

1. Hillsman first contends that the evidence was insufficient to support his convictions on the charges of cruelty to children in the first degree and aggravated battery. Specifically, he argues that the State failed to prove that he acted with malice with regard to either offense. We disagree.

Under OCGA § 16-5-70 (b), "[a] person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." And for purposes of this Code section, malice in the legal sense "imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result."[5] Additionally, OCGA § 16-5-24 (a) provides that "[a] person commits the offense of aggravated battery when he or she maliciously

---

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

[5] *Adorno v. State*, 314 Ga. App. 509, 511-12 (1) (724 SE2d 816) (2012) (punctuation omitted).

6

causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." And under Georgia law, a person acts maliciously within the meaning of the aggravated-battery statute when "he acts intentionally *and* without justification or serious provocation."[6] Importantly, intent is a question for the jury, which is "authorized to consider all other circumstances connected with the act at issue as well as the defendant's words, conduct and demeanor."[7]

In this matter, Count 1 of the indictment charged Hillsman with cruelty to children in the first degree by alleging that he "did unlawfully and maliciously cause [J. M.], a child under the age of eighteen (18) years, cruel and excessive pain by shaking and striking said [J. M.] . . . ." Count 2 of the indictment charged Hillsman with aggravated battery by alleging that he "did unlawfully and maliciously cause bodily harm to [J. M.] by rendering said [J. M.'s] brain, a member of said person's body useless. . . ." And as previously discussed, the State presented evidence that J.

---

[6] *Bizzard v. State*, 312 Ga. App. 185, 186 (1) (718 SE2d 52) (2011) (punctuation omitted).

[7] *Garrett v. State*, 300 Ga. App. 391, 394 (685 SE2d 355) (2009).

M. suffered serious injuries from being shaken and that his brain function was impaired as a result of those injuries. Given these particular circumstances, despite Hillsman's claim that J. M.'s injuries were the result of running while carrying the child and improper CPR, the evidence was sufficient to prove that Hillsman acted maliciously and to authorize the jury to find him guilty beyond a reasonable doubt of cruelty to children in the first degree[8] and aggravated battery.[9]

2. Hillsman also contends that the evidence was insufficient to support his conviction on the charge of aggravated assault, arguing that the State failed to show that the kitchen knife was a deadly weapon. Again, we disagree.

---

[8] *See Legan v. State*, 289 Ga. App. 244, 246-47 (1) (656 SE2d 879) (2008) (holding that evidence was sufficient to support malice element of cruelty to children in the first degree based on physician's testimony as to the nature of child's injuries and despite defendant's claim that the injuries were a result of an accident, including improper CPR); *Cochran v. State*, 285 Ga. App. 175, 176-77 (645 SE2d 662) (2007) (holding that despite defendant's testimony that breaking child's arm was an accident, evidence was sufficient to show defendant acted maliciously and, thus, support his conviction of cruelty to children in the first degree).

[9] *See Miller v. State*, 275 Ga. 730, 731-32 (1) (571 SE2d 788) (2002) (holding that when evidence shows that a defendant's battered victim has suffered a severe injury to their brain, resulting in the loss of normal brain functioning, victim has suffered an aggravated battery); *Jackson v. State*, 314 Ga. App. 806, 807 (1) (726 SE2d 63) (2012) (same).

Under OCGA § 16-5-21 (a) (2), aggravated assault is committed when a person "assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" And when a criminal defendant is charged with aggravated assault under OCGA § 16-5-21 (a) (2),

> whether the instrument used constitutes "a deadly weapon" or an "object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury" is properly for the jury's determination.[10]

In this case, Count 3 of the indictment charged Hillsman with aggravated assault by alleging that he "did unlawfully make an assault upon the person of [J. M.], with a knife, a deadly weapon in the manner used, by intentionally cutting the foot of said [J. M.] . . . ." During the trial, the jury viewed the knife recovered from Hillsman's home and heard the physician's testimony regarding the puncture wounds on J. M.'s feet and her medical opinion that they were not consistent with someone

---

[10] *Ellison v. State*, 288 Ga. App. 404, 405 (654 SE2d 223) (2007).

attempting to remove splinters. Thus, the jury was authorized to infer from the evidence that the knife was used as a deadly weapon.[11]

3. Hillsman further contends that the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to request that the jury be charged on cruelty to children in the second degree as a lesser-included offense of cruelty to children in the first degree. Yet again, we disagree.

In order to prevail on his claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[12] which requires Hillsman to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[13] In addition, there is a strong presumption that trial counsel's conduct falls within the

---

[11] *Preston v. State*, 300 Ga. App. 433, 434 (685 SE2d 420) (2009) (upholding aggravated-assault conviction when defendant brandished a serrated steak knife and demanded that victim drive him somewhere); *Ellison*, 288 Ga. App. at 405 (upholding defendant's aggravated-assault conviction because the jury was allowed to infer that the knife-like shank defendant used constituted a deadly weapon).

[12] 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[13] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

10

broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[14] Unless clearly erroneous, this Court will uphold a trial court's "factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[15] With this analytical backdrop in mind, we now turn to Hillsman's claim of error.

Here, during the charge conference, Hillsman's trial counsel requested that the trial court instruct the jury as to misdemeanor reckless conduct as a lesser-included offense for both cruelty to children in the first degree and aggravated assault, but he did not request an instruction on cruelty to children in the second degree as a lesser-included offense. At the conclusion of the charge conference, the trial court agreed to instruct the jury on reckless conduct as a lesser-included offense for aggravated assault but refused to do so with regard to cruelty to children in the first degree. And indeed, despite Hillsman's objection, the trial court instructed the jury accordingly.

---

[14] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[15] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

In his motion for new trial, Hillsman argued that his trial counsel rendered ineffective assistance by failing to request that the court instruct the jury as to cruelty to children in the second degree as a lesser-included offense for cruelty to children in the first degree. But when questioned on this issue during the hearing on Hillsman's motion, his trial counsel testified that because his defense was focused on the theory that J. M.'s injuries were the result of accidents (*i.e.*, improper CPR and running while carrying J. M., and not any intent to harm the child), he wanted the jury to have the option of convicting on a misdemeanor offense of reckless conduct. Additionally, trial counsel testified that he was skeptical as to whether cruelty to children in the second degree was applicable in this case.

As previously noted, Hillsman contends that his trial counsel's failure to request an instruction on cruelty to children in the second degree as a lesser-included offense constituted ineffective assistance. But decisions about which jury charges to request are "classic matters of trial strategy."[16] And here, Hillsman's defense at trial was that he did not purposefully shake or strike J. M. and that even if his actions did cause the child's injuries, such actions (improper CPR and running while carrying J.

---

[16] *Jessie v. State*, 294 Ga. 375, 377 (2) (a) (754 SE2d 46) (2014); *accord Reid v. State*, 286 Ga. 484, 487 (3) (b) (690 SE2d 177) (2010).

M.), at most, constituted negligence, *i.e.*, reckless conduct. Given that reckless conduct, in certain circumstances, may indeed be a lesser-included offense of cruelty to children,[17] trial counsel's attempt to have the court instruct the jury in such a manner was reasonable trial strategy.[18] Accordingly, the trial court did not err in denying Hillsman's claim of ineffective assistance of counsel.

4. Finally, Hillsman contends that the trial court erred in failing to conduct a hearing to determine whether he could represent himself after he informed the court that he was dissatisfied with his trial counsel. Once again, we disagree.

It is well established that both the federal and Georgia constitutions guarantee a criminal defendant the right to self-representation.[19] And an unequivocal assertion

---

[17] *See Banta v. State*, 282 Ga. 392, 397 (5) (651 SE2d 21) (2007) (noting that reckless conduct may in certain circumstances be a lesser-included offense of cruelty to children).

[18] *See Jessie*, 294 Ga. at 377 (2) (a) (finding that trial counsel's failure to request certain jury instructions and instead pursue an all or nothing strategy did not constitute ineffective assistance); *Reid*, 286 Ga. at 487 (3) (b) ("Decisions about which jury charges to request are strategic and provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.").

[19] *See Faretta v. California*, 422 U.S. 806, 819 (III) (A) (95 SCt 2525, 45 LE2d 562) (1975) (holding that although not explicitly stated in the Sixth Amendment, the right to self-representation is necessarily implied by the structure of the Amendment); Ga. Const., Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to

of the right to represent oneself, made prior to trial, "should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation."[20]

But in this matter, prior to Hillsman's own testimony during the hearing on his motion for new trial, there is no evidence in the record that Hillsman ever made an unequivocal request to represent himself. Furthermore, although during the hearing on his motion for new trial, Hillsman claimed that he expressed a desire to fire his counsel at a preliminary hearing, his trial counsel did not recall Hillsman ever asking the trial court to fire or replace him. And the trial court was authorized to believe the testimony of trial counsel and reject any conflicting testimony from Hillsman.[21] Accordingly, the trial court found that Hillsman did not make an unequivocal request

---

prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

[20] *Crutchfield v. State*, 269 Ga. App. 69, 71 (2) (603 SE2d 462) (2004) (punctuation omitted); *accord Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990).

[21] *See Young v. State*, 329 Ga. App. 70, 72 (1) (763 SE2d 735) (2014) (holding that in denying defendant's ineffective-assistance claim, trial court was authorized to believe trial counsel's testimony that he advised against a bench trial over defendant's contrary testimony); *Butler v. State*, 319 Ga. App. 350, 353 (734 SE2d 567) (2012) ("In its role as factfinder, the trial court was authorized to believe the testimony of trial counsel and reject any conflicting testimony from [defendant].").

to represent himself, and absent such a request, the court did not err in failing to conduct a *Faretta*[22] hearing or in requiring Hillsman to proceed to trial with his appointed counsel.[23]

For all these reasons, we affirm Hillsman's convictions and the denial of his motion for new trial.

*Judgment affirmed. Ray and Self, JJ., concur.*

---

[22] *See* 422 U.S. at 819 (III) (A).

[23] *See Crutchfield*, 269 Ga. App. at 71 (2) (holding that record demonstrated that defendant did not make an unequivocal request to represent himself, and thus defendant was not entitled to a hearing on the matter of self-representation, even though defendant indicated dissatisfaction with counsel).